UNITED STATES OF AMERICA
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHAIRA IVETH HERNANDEZ, INDIVIDUALLY *PLAINTIFF* | § § § § | |
| VS. | § § § | CIVIL ACTION NO: _____ JURY TRIAL DEMANDED |
| CITY OF CASTLE HILLS AND OFFICER A. DE NAVA, *DEFENDANTS* | § § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

NOW COMES Plaintiff SHAIRA IVETH HERNANDEZ hereinafter ("Plaintiff" or "Ms. Hernandez"), by and through her attorneys, and hereby files this Complaint against Defendants OFFICER A. DE NAVA (hereinafter " DE NAVA") and CITY OF CASTLE HILLS for this cause of action and would respectfully show unto the Court the following:

### I.    PARTIES

1.1    Plaintiff is an individual and resident of Bexar County, Texas.

1.2    Defendant CITY OF CASTLE HILLS is a municipality located in Bexar County, Texas, and may be served with citation by serving the City Secretary, Maria Franco, **209 LEMONWOOD DR, CASTLE HILLS**, **TX 78213** or wherever she may be found.

1.3    Defendant, DE NAVA is a deputy police officer with the Castle Hills Police Department, against whom this action is brought in his individual capacity.

1

Defendant may be served at: **209 LEMONWOOD DR, SAN ANTONIO, TX 78213** or wherever he may be found.

## II.    SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION AND VENUE

**2.1**    The subject matter in controversy and damages sought are within the jurisdictional limits of this Court pursuant to 28 USC 1331.

**2.2**    This Court has jurisdiction over this suit under 42 U.S.C. §1983 and supplemental jurisdiction over the state law claims contained therein, as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**2.3**    Venue is appropriate in the Western District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Bexar County, Texas, which is in the San Antonio Division of the Western District of Texas.

## III.    FACTS

**3.1**    On January 14, 2023, on or about 7:00 pm, Plaintiff was driving her vehicle on 6000 Block of West Avenue in San Antonio, Texas.

**3.2**    Plaintiff had a friend in the passenger seat, her mom in the backseat, and a baby in the back seat.

**3.3**    Plaintiff was stopped at a traffic light and subsequently got rear-ended by another vehicle. After the collision, Plaintiff drove forward to a safe location and pulled over in front of a local business near the accident scene.

**3.4**     Plaintiff called the police to notify them of the incident. Defendant **DE NAVA** was dispatched to the scene of the incident. However, EMS arrived at the scene first and started to perform a routine check up on Plaintiff and the other passengers. As Plaintiff was talking to EMS paramedics, Defendant **DE NAVA** arrived at the scene of the incident and started talking to the driver of the vehicle that rear-ended Plaintiff.

**3.5**     Defendant **DE NAVA** subsequently approached Plaintiff. **DE NAVA** demanded Plaintiff's driver license to run a background check. Within minutes, **DE NAVA** advised Plaintiff that she had an outstanding arrest warrant since 2018.

**3.6**     Plaintiff was in disbelief because she had the same physical and mailing address since 2018 and had never been notified or served with any type of citation or arrest warrant. Indeed, Plaintiff had a background check performed after the arrest warrant was issued and no record of an outstanding arrest warrant ever came up in the results of said background check.

**3.7**     Plaintiff attempted to ask what the warrant was for but did not receive any concrete information from Defendant **DE NAVA**.  As a result of the outstanding arrest warrant, Plaintiff was forcefully placed under arrest, handcuffed, and taken into custody. Plaintiff was taken to the holding cell at the Castle Hill's police department.

**3.8**     Plaintiff was subsequently transferred to the downtown city jail. Defendant **DE NAVA** used excessive force when transporting Plaintiff to the downtown city jail. For instance, **DE NAVA** forcefully placed her inside the patrol car and drove her to the downtown city jail.

**3.9**    DE NAVA continued to use excessive force throughout the entire transfer process. Upon arrival at the downtown city jail, DE NAVA grabbed Plaintiff and pulled her out of the patrol car. Thereafter, DE NAVA violently slammed the patrol car door against Plaintiff's shoulder, causing the shoulder to get pinned between the patrol car and the door. Plaintiff sustained substantial injuries as a result thereof.

**3.10**    Despite the fact that Plaintiff was experiencing severe pain, DE NAVA continued with the transfer process in a violent/aggressive manner and forced Plaintiff to undergo the booking process at the city jail.

**3.11**    As Plaintiff was undergoing the booking process, Plaintiff advised the police department officers that she was experiencing extreme shoulder pain (as a result of DE NAVA slamming the door against her shoulder). Police officers were indifferent to Plaintiff's complaints and instead demanded her to raise her hands against the wall. Although Plaintiff advised police officers that she was unable to raise her arms/hands because of the severe pain she was experiencing, Plaintiff was still forced to raise her hands/arms, which caused her to experience additional pain/strain of her shoulder/arm.

**3.12**    During the entire time Plaintiff waited to be booked, she repeatedly asked officers to get her medical attention because she was in severe pain. Again, police officers were indifferent and advised Plaintiff that she needed to wait for her turn.

**3.13**    After experiencing ongoing pain for hours, police officers finally called the on-call nurse at around 3:00 am to evaluate Plaintiff.

**3.14**    Plaintiff had abnormally high blood pressure and was only given a shot and over-the-counter Tylenol for her pain. Plaintiff spent hours that night enduring severe pain given that she was refused additional medical treatment.

**3.15**    Plaintiff was released from the downtown city jail the following morning at around 12: 00 pm. Plaintiff went straight to Methodist Hospital to get medical treatment.

**3.16**    As a result of DE NAVA's wrongful conduct and the wrongful conduct of other police officers, Plaintiff sustained injuries to her shoulder/arm, which have required for her to undergo extensive treatment.

**3.17**    Plaintiff did not act or behave in a manner that justified the use of excessive force, causing her severe injuries, as set forth below.

### IV. CAUSES OF ACTION
### COUNT ONE
### CLAIMS UNDER 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION AGAINST DEFENDANT DE NAVA

**4.1**    Plaintiff repeats and realleges each and every allegation contained in above referenced paragraphs as though fully delineated below with respect to each cause of action.

**4.2**    Defendant DE NAVA, acting under color of law, deprived Ms. Hernandez of the rights and privileges secured her by the Fourth Amendments to the United States Constitution to be free from illegal and unreasonable seizures by the use of force and illegal and unreasonable searches.

**4.3**    Accordingly, Ms. Hernandez commences this action pursuant to 42 U.S.C. § 1983.

**4.4**    Defendant DE NAVA violently assaulted by aggressively pinning the patrol car door against Ms. Hernandez's shoulder pursuant to the policy, custom, and/or practice of the Castle Hills Police Department of using violent, nonlethal force to seize a person, even when that person is not an imminent threat.

**4.5**    "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive to the need of force; and (3) that the use of force was unreasonable under the circumstances."[1]

**4.6**    Ms. Hernandez was injured in her contact with Defendant DE NAVA. Her injuries were caused by Defendant DE NAVA hitting her with the police car door. As the Fifth Circuit has opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tortfeasor [ — here, Defendant DE NAVA —] takes his victim as he finds [her]."[2]

**4.7**    Ms. Hernandez's injuries resulted directly and only from a use of force that was not only excessive, but entirely unreasonable and unnecessary, as Ms. Hernandez did not pose a threat to the Castle Hills PD officers or the general public.

---

[1] *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir.2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)).

[2] *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).

**4.8**    "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance."[3]

*4.9*    In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

       a.  *Severity of the crime;* and

       b.  *Immediate threat.*

**4.13**    Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case."[4]

**4.14**    "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight."[5]

**4.15**    Under *Graham,* courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way.[6]

---

[3] *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009).
[4] Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).
[5] *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).
[6] *Ibid* (citing *Graham v. Connor*, at 396).

**4.16**  As to the three elements of the *Graham* objective reasonableness test, none of the factors apply to Defendant DE NAVA's contact with Ms. Hernandez because he had no legal justification at all for using force.

**4.17**  Ms. Hernandez suffered physical injury, pain, and mental anguish as a direct result of the unlawful, unreasonable excessive force used against her and the unlawful, unreasonable, and search she was subjected to after the incident.

**COUNT TWO**

**BATTERY AGAINST DEFENDANT DE NAVA.**

**4.21**  Plaintiff repeats and realleges by reference all prior paragraphs as if fully set forth herein.

**4.22**  Defendant DE NAVA willfully and unlawfully used force and/or violence upon Plaintiff when he hit her with the patrol car door, causing substantial bodily injuries.

**4.23**  Defendant's actions were deliberate and willful.

**4.24**  As a direct and proximate result of Defendant's assault, Plaintiff was required to seek medical care.

**4.25**  Plaintiff has suffered physical and mental pain and anxiety, and will continue to do so in the future.

**COUNT THREE**
**FOURTH AMENDMENT § 1983 MONELL CLAIM AGAINST CITY OF CASTLE HILLS**

**4.26**  Plaintiff incorporates by reference all of the foregoing and further alleges the following:

**4.27**   The conduct of Defendant DE NAVA constituted unlawful, unreasonable excessive force and an unlawful, unreasonable search and/or seizure of Ms. Hernandez's body and/or belongings without legal cause or justification.

**4.28**   At all material times, Defendant DE NAVA acted under color of state law, as an agent of Castle Hills Police Department.

**4.29**   Defendant DE NAVA was acting within the course and scope of his duties as a Castle Hills Police Department deputy when he brutally assaulted Ms. Hernandez. At all times relevant to this lawsuit, Defendant DE NAVA was clad in his Castle Hills Police Department issued uniform.

**4.30**   Defendant CITY OF CASTLE HILLS is the policymaker for all matters related to the Castle Hills Police Department.

**4.31**   Consequently, Defendant CITY OF CASTLE HILLS had or ratified the following policies, customs, and/or practices in place when Defendant DE NAVA attacked Ms. Hernandez:

   a.   Hiring "rogue," unqualified peace officers, many of whom had previous misconduct in their backgrounds;

   b.   Not requiring applicants to serve as deputies to submit a personal history statement (PHS);

   c.   Overlooking the misconduct in the backgrounds of applicants for Castle Hills Police deputy;

   e.   Using violent, nonlethal force to seize a person, even when that person is not an imminent threat;

g.     Conducting warrantless, consent less searches of citizens where they do not have probable cause to do so;

h.     Subjecting unarmed citizens to official oppression and assault;

i.     Failing to require all peace officers go through the customary five to seven months' training before hitting the street on their own;

j.     Failing to meaningfully discipline officers found to be using excessive force; and/or

k.     Emboldening deputies to use force considerably more frequently than is necessary.

**4.32**   On information and belief, Defendant CITY OF CASTLE HILLS, through, the Castle Hills Police Department consistently reviewed such uses of force and found no issue with nearly all of them, rarely disciplining officers for using force. Therefore, Defendant CITY OF CASTLE HILLS approved and encouraged such conduct.

**4.33**   Defendant CITY OF CASTLE HILLS, violated Ms. Hernandez's constitutional rights when it failed to supervise Defendant NAVA by encouraging the use of excessive force; hiring him when he was unfit to be a peace officer and all of the other above listed policies, all of which coalesced to cause the divestiture of Ms. Hernandez's constitutional rights.

**4.34**   Defendant CITY OF CASTLE HILLS was deliberately indifferent to the natural byproducts of these policies, practices, and/or customs, of which it was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying them and ensuring further civilians were not hurt by them.

**4.35**   Defendant CITY OF CASTLE HILLS was actually aware of facts from which any reasonable policymaker could draw the inference that a substantial risk of serious harm and violation of constitutional rights existed, and actually drew that inference.

**4.36**   Defendant CITY OF CASTLE HILLS was aware of a great number of similar incidents occurring before Ms. Hernandez's assault, although it was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of these policies.

**4.37**   Defendant CITY OF CASTLE HILLS staff knew or should have known that hiring "rogue," unqualified peace officers, encouraging uses of force, failing to discipline violent peace officers routinely involved in uses of force, and all the other aforementioned policies would cause other Castle Hills Police officers to routinely and continuously violate the constitutional rights of Bexar County residents and others with the unfortunate luck of crossing paths with Castle Hills PD deputies.

**4.38**   Each of the policies listed, supra, was actually known, constructively known, and/or ratified by Defendant CITY OF CASTLE HILLS and its policymakers, and were promulgated with deliberate indifference to Ms. Hernandez's rights under the United States Constitution and the rights of all others making contact with Castle Hills PD deputies. The policymakers of Defendant CITY OF CASTLE HILLS knew that their deputies would continuously be put in situations wherein constitutional violations like those aforementioned in this complaint would occur. These policies made it highly likely that such constitutional violations as those previously described would occur, under color of state law.

**4.39** All previously mentioned policies were a moving force of Ms. Hernandez's constitutional deprivations and injuries, causing her to experience physical and mental injury and suffer damages.

## COUNT FOUR

### NEGLIGENT HIRING, SUPERVISION, TRAINING, OR RETENTION OF AN EMPLOYEE AGAINST DEFENDANT CITY OF CASTLE HILLS

**4.40** Plaintiff incorporates by reference all of the foregoing and further alleges the following:

**4.41** The elements of a cause of action for negligently hiring, supervising, training, or retaining and employee are the following:

a. The employer owed the Plaintiff a legal duty to hire, supervise, train, or retain competent employees.

b. The employer breached that duty.

c. The employee committed a tort.

d. The employer's breach and the employee's tort proximately caused the Plaintiff's injury.

**4.42** As previously mentioned, Defendant CITY OF CASTLE HILLS had a woefully inadequate system of checking the backgrounds of applicants for the position of deputy with the Castle Hills Police Department.

**4.43** On information and belief, red flags were often overlooked; incomplete applications and/or background documents accepted; or applicants accepted on the personal recommendation of previous coworkers.

**4.44**    Defendant **CITY OF CASTLE HILLS** undoubtedly owed Ms. Hernandez and all of

its other citizens a legal duty to hire, supervise, train, or retain competent employees,

particularly those employed as deputies or officers.

**4.45**    On information and belief, Defendant **CITY OF CASTLE HILLS** routinely

breached this duty by hiring, retaining, and/or failing to supervise inadequate or

incompetent officers, such as Defendant **DE NAVA**.

**4.46**    Defendant **DE NAVA** was hired pursuant to Defendant **CITY OF CASTLE HILLS'**

negligent hiring and retention policies and committed the torts of assault, and official

oppression of Ms. Hernandez.

**4.47**    Defendant **CITY OF CASTLE HILLS'** breach and Defendant **NAVA'S** wrongful

conduct proximately caused Ms. Hernandez's injuries.

## COUNT FIVE
### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY AGAINST DEFENDANT CITY OF CASTLE HILLS

**4.48**    Plaintiff repeats and realleges by reference all prior paragraphs as if fully set

forth herein.

**4.49**    Defendant **CITY OF CASTLE HILLS** was, to the extent known, the employer of

Defendant **DE NAVA**.

**4.50**    All negligent actions alleged against Defendant **DE NAVA** were performed

within the scope of his employment and obligations as an employee and/or agent of

Defendant **CITY OF CASTLE HILLS**.

**4.51**    Pursuant to the doctrine of respondeat superior, Defendant **CITY CASTLE**

**HILLS** is vicariously liable to Plaintiff for any and all damages directly and

proximately caused by its employees or agent's negligent and intentional conduct, including Defendant DE NAVA.

**4.52**  As a direct and proximate result of Defendant CITY OF CASTLE HILLS' negligence, carelessness, recklessness, maliciousness, wanton and willfulness, Plaintiff required medical care to treat the injuries SHE sustained due to the battery by Defendant DE NAVA.

## QUALIFIED IMMUNITY UNDER § 1983

**4.53**  City employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

  a.    The individual's acts deprived the party of constitutional rights under color of law;

  b.    The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

  c.    Such acts were not objectively reasonable under the circumstances, that is, no rea sonable official could have believed at the time that the conduct was lawful.

**4.54**  Defendant DE NAVA acting under color of state law, enforcing the policies, customs, and/or practices of the Castle Hills Police Department, deprived Ms. Hernandez of her civil liberties, without due process of law, by assaulting her unlawfully and unreasonably.

**4.55**  No reasonable official could have believed that assaulting Ms. Hernandez was lawful, let alone humane or remotely appropriate.

**4.56**   The acts of Defendant DE NAVA were unreasonable under the circumstances when viewed objectively.

**4.57**   Defendant DE NAVA was deliberately indifferent to the excessive risk of harm to Ms. Hernandez in the actions he took. Such acts deprived Ms. Hernandez of and violated her clearly established constitutional rights and were not objectively reasonable.

**4.58**   The acts of Defendant DE NAVA clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Ms. Hernandez's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that his actions were violative of such rights.

**4.59**   The acts of Defendant DE NAVA were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as attacking a family violence victim when responding to a call where they were attached. Thus, Defendant is liable to Plaintiff for the damages caused by his actions, which were the direct and proximate causes, in each count alleged above respectively, of Ms. Hernandez's injuries.

## V.    REQUEST FOR JURY TRIAL

**5.1**   Plaintiff demands that this case and all of its issues so triable be decided by a jury as allowed by the Seventh (7th) Amendment to the United States Constitution and further enshrined in law by Rule 38 of the Federal Rules of Civil Procedure. Plaintiff acknowledges any applicable payment of the required jury fee.

## VI.    PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

**6.1**    Plaintiff hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including contracts, lists of donors, emails, minutes of meetings, memoranda, correspondence, financial records, diagrams, maps, photographs, videotapes, audiotapes, recordings, invoices, checks, files, facsimiles, voicemails, text messages, calendar entries, log books, or information related to the reference claim. Failure to maintain such items shall constitute a "spoliation" of the evidence.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that Defendant be cited to appear and answer, and on final trial hereafter, the Plaintiff have judgement against Defendant jointly and severally, in an amount within the jurisdictional limits of this Court, together with all pre-judgment and post-judgment interest allowed by law, costs of Court, and for such other further relief to which Plaintiff may be justly entitled by law and equity, including but not limited to:

1. Physical pain sustained in the past;

2. Mental anguish sustained in the past;

3. Physical pain that, in reasonable probability, Plaintiff will sustain in the future;

4. Mental anguish that, in reasonable probability, Plaintiff will sustain in the future;

5. Physical impairment sustained in the past;

6. Physical impairment that, in reasonable probability, Plaintiff will sustain in the future;

7. Medical care expenses sustained in the past;

8. Medical care expenses that, in reasonable probability, Plaintiff will sustain in the future;

9. Loss of consortium;

10. Pre-judgment interest;

11. Post-judgment interest;

12. Exemplary damages;

13. Past lost wages;

14. Loss of Future Wage-Earning Capacity;

15. Disfigurement sustained in the past; and

16. Disfigurement that, in reasonable probability, Plaintiff will sustain in the future.

RESPECTFULLY SUBMITTED,

DESOUZA INJURY LAWYERS
4047 NACO PERRIN BLVD. SUITE 100
SAN ANTONIO, TEXAS 78230
210/ 714-4215 – PHONE
210/496-0060 – FACSIMILE

BY: */S/ Jason F. DeSouza*
JASON F. DESOUZA
STATE BAR NO.: 24073255
jason@jfdlawfirm.com

BY: */S/ JORGE L. ALVAREZ*
JORGE ALVAREZ
STATE BAR NO: 24133590
(FEDERAL ADMISSION FORTHCOMING)
jorge@jfdlawfirm.com

*ATTORNEYS FOR PLAINTIFF*